IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **JONCE MOJSOSKI,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 1:22-cv-00019-HAB-SLC |
| | ) |
| **DEPARTMENT OF LEADERSHIP STUDIES, INDIANA WESLEYAN UNIVERSITY, JOANNE BARNES, PATRICIA JOHNSON, and MARK RENNAKER,** | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, Indiana Wesleyan University ("IWU"), Joanne Barnes ("Dr. Barnes"), Patricia Johnson ("Dr. Johnson"), and Mark Rennaker ("Dr. Rennaker") (collectively the "Defendants") submit this memorandum of law in support of their Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c).

### I.   INTRODUCTION

Plaintiff Jonce Mojsoski ("Mojsoski") was a graduate student seeking a Ph.D. in Organizational Leadership from the Department of Leadership Studies (the "Ph.D. Program") at Indiana Wesleyan University. (Dkt. 16 at ¶ 1).[1]  Unfortunately for Mojsoski, he was unable to successfully fulfill all requirements of the Ph.D. Program—he failed the comprehensive examination on three separate occasions between March 2019 and January 2020 (one occasion

---

[1] On a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a court may consider the pleadings, which include the Complaint, the Answer, and any written instruments attached as exhibits. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir.1998).  A court, therefore, may consider the amended pleadings in assessing a party's motion for judgment on the pleadings. *See e.g., Jaffri v. Thrasher Buschmann & Voelkel, P.C.*, No. 1:14-CV-01704-TWP, 2015 WL 1119726, at *2 (S.D. Ind. Mar. 10, 2015); *see also Mercer v. Duke Univ.*, 401 F.3d 199, 202 (4th Cir. 2005).

being the unprecedented result of a special Grade Appeal). (Dkt. 16 at ¶¶ 12, 13, 15, 19, 20, 21, 25, 26, 29).  In his Complaint, Mojsoski alleges that "as a white Eastern European student [at IWU], Plaintiff has experienced racist, unfair, and harmful interaction … ." (Dkt. 16 at ¶ 35).  In addition to naming IWU as a defendant in the suit, Mojsoski names Dr. Barnes, Dr. Johnson, and Dr. Rennaker as individual defendants.  In so doing, Mojsoski apparently attempts to assert a claim under Title VI of the Civil Rights Act of 1964 ("Title VI"), which prohibits discrimination based on race, color, or national origin by institutions that receive federal funds. *See* 42 U.S.C. §§ 2000d *et seq*.  On this basis, Mojsoski seeks litigation fees and expenses, other relief this Court deems appropriate, unspecified compensatory damages, and punitive damages in the amount of $150,000,000 (One Hundred and Fifty Million Dollars). (Dkt. 16 at ¶¶ 1-6-Relief).

Mojsoski's Complaint fails to state a claim upon which relief can be granted.  At the outset, most of the claimed adverse actions in the Complaint are time-barred by the applicable two-year statute of limitations.  Second, even liberally construed, the Complaint fails to allege sufficient facts linking the challenged adverse action to a discriminatory motive.  Third, Mojsoski's claims against Dr. Barnes, Dr. Johnson, and Dr. Rennaker in their individual capacities are not actionable as a matter of law.  Finally, and in any event, punitive damages are not available under Title VI.  Mojsoski's claims, therefore, should be dismissed in their entirety and with prejudice.

## II. BACKGROUND

In September 2017, Mojsoski was attending the Department of Leadership Studies at Indiana Wesleyan University, seeking to obtain his Ph.D. in Organizational Leadership. (Dkt. 16 at ¶¶ 1, 2). Around this same time, Mojsoski enrolled in a Global Perspectives In Leadership course taught by Dr. Barnes, a black professor at IWU. (Dkt. 16 at ¶ 2).  During a class session

of the Global Perspectives In Leadership course, Dr. Barnes explained that she was often not respected due to her race and sex during her leadership in Germany and Poland, which comment Dr. Barnes made to illustrate sex- and race-based biases faced by leaders. (*Id.*). Mojsoski apparently took note of this comment and expressed his concerns regarding the same to a peer. (*Id.*).

More than one year later, Mojsoski submitted his comprehensive portfolio, the successful completion of which was a requirement of his Ph.D. Program. (Dkt. 16 at ¶¶ 8-13). The original committee assigned to evaluate Mojsoski's portfolio consisted of Dr. Barnes and Dr. Johnson, who is also a black professor at IWU. (Dkt. 16 at ¶¶ 8, 9). On February 1, 2019, Mojsoski was informed that Dr. Barnes and Dr. Johnson had rated the portfolio he submitted as "Unacceptable" and that he would have to rework and resubmit it—which he did on February 20, 2019. (Dkt. 16 at ¶¶ 8, 11). On March 13, 2019, Mojsoski received word that Dr. Barnes and Dr. Johnson had graded his revised portfolio as "Pass." (Dkt. 16 at ¶ 12). At this same time, Mojsoski was informed that he would now undertake the oral comprehensive examination before Dr. Barnes and Dr. Johnson, which Mojsoski had to pass as a requirement of the Ph.D. Program. (Dkt. 16 at ¶¶ 12, 13).

On March 19, 2019, Mojsoski had his first attempt at the comprehensive examination. (Dkt. 16 at ¶¶ 12, 13). However, Mojsoski failed. (Dkt. 16 at ¶ 15). On April 23, 2019, Mojsoski was permitted a second attempt at the comprehensive examination, once more before Dr. Barnes and Dr. Johnson, but again failed. (Dkt. 16 at ¶¶ 19, 20). In their communications with Mojsoski after his second failed attempt, Dr. Barnes and Dr. Johnson provided feedback substantiating Mojsoski's failing score, explaining that he had been unable to speak to certain topics raised during the comprehensive examination. (Dkt. 16 at ¶ 20). Thereafter, Mojsoski

connected with Dr. Rennaker, a white professor at IWU and Chair of the Department of Leadership Studies, who provided Mojsoski with information on IWU's Grade Appeal process. (Dkt. 16 at ¶ 21).  Dr. Rennaker informed Mojsoski that he was not aware of any student who had successfully appealed. (*Id.*)

On August 15, 2019, after submitting a Grade Appeal, Mojsoski was informed that he would be given an unprecedented third and final opportunity to attempt the comprehensive examination, this time before a different comprehensive examination committee. (Dkt. 16 at ¶¶ 21, 25, 26).  On his third attempt, Mojsoski would be evaluated by Tim Beuthin ("Dr. Beuthin"), a white professor at IWU, and Almarie Donaldson-Munley ("Dr. Donaldson-Munley"), a Hispanic professor at IWU. (Dkt. 16 at ¶ 26).  Additionally, Mojsoski received extra time to prepare for his third attempt at the comprehensive examination. (Dkt. 16 at ¶¶ 27-29).  On January 16, 2020, approximately five months after he was approved to take the comprehensive examination again, Mojsoski failed for a third and final time. (Dkt. 16 at ¶ 29).

On January 14, 2022, Mojsoski filed a Complaint with this Court asserting what appears to be a Title VI claim against the Defendants.  Specifically, in the final paragraphs of his Complaint, Mojsoski alleges that "[t]his Civil Right lawsuit is pursued on behalf of Jonce Mojsoski, a white Eastern European male who has experienced severe, malicious, and racist treatment at the Department of Leadership Studies," and that "as a white Eastern European student, [Mojsoski] has experienced racist, unfair, and harmful interaction at Defendant, Department of Leadership Studies." (Dkt. 16 at ¶¶ 34, 35).  Mojsoski also claims that "[d]espite being notified of racial discrimination and related injustice, Defendants have failed to take steps to stop the discrimination and ensure Plaintiff's safe environment." (Dkt. 16 at ¶ 36).

The Defendants move this Court for a judgment on the pleadings dismissing Mojsoski's claims because, as further explained below, Mojsoski's Complaint fails to state a claim upon on which relief can be granted.

## III.   ARGUMENT

### A.   Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ P. 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007); *see also Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004) ("This Court reviews a decision to grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) *de novo*, using the standard applicable to dismissals under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted."). To survive a motion to dismiss, Fed. R. Civ. P. 8(a) requires a plaintiff to include a "short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a). Courts have interpreted this requirement to mean that "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although *pro se* complaints are to be liberally construed and held to a less stringent standard than pleadings drafted by lawyers, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013), the factual allegations in the complaint must be enough to raise a right to relief above a speculative level, *Twombly*, 550 U.S. at 555. Dismissal of a claim is appropriate if it appears certain "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Indeed, a plaintiff can plead himself out of court if his allegations clearly establish all the elements of an affirmative defense, including the defense that the action was filed after the

5

statute of limitations period expired. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

**B.     Argument**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  The purpose of Title VI is simple—to ensure that public funds are not spent in a way that encourages, subsidizes, or results in discrimination on the aforementioned bases. *See* 110 Cong. Rec. 1519 (1964).  Aggrieved individuals may bring a civil suit for intentional discrimination under Title VI because the statute contains an implied private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)).  There is no requirement that a plaintiff exhaust his administrative remedies before bringing a private Title VI civil action. *See, e.g., Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Private parties seeking judicial enforcement of Title VI's nondiscrimination protections must prove intentional discrimination. *Id.* at 280–81.  To establish a *prima facie* case of intentional discrimination under Title VI, "a complaining party must demonstrate that [his] race, color, or national origin was the motive for the discriminatory conduct." *C.S. v. Couch*, 843 F. Supp. 2d 894, 915 (N.D. Ind. 2011) (quoting *Thompson v. Bd. of the Special Sch. Dist. No. 1*, 144 F.3d 574, 581 (8th Cir. 1998)).  Such claims under Title VI may be analyzed using the same familiar *McDonnell Douglas* framework applicable to employment discrimination claims. *See,*

*e.g., Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007); *see also Sawyer v. Columbia Coll.*, 864 F. Supp. 2d 709, 720-22 (N.D. Ill. 2012); *see also Richardson v. Lutheran Univ. Ass'n*, No. 2:14-CV-92-PRC, 2015 WL 6473638, at *5 (N.D. Ind. Oct. 26, 2015) ("The burden-shifting, indirect method of proving discrimination established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* … applies to claims brought under Title VI."). Mojsoski's attempt to assert a claim under Title VI fails for several reasons.

### 1. Nearly Every Claimed Adverse Action Is Time-Barred by the Applicable, Two-Year Statute of Limitations

Most of Mojsoski's attempts to challenge the adverse actions identified in his Complaint (i.e., the non-passing scores on his portfolio and the comprehensive examination) never get out of the gate because they are time-barred by the applicable statute of limitations. Federal claims arising under pre-1990 statutes, including Title VI, are governed by the forum state's personal injury statute of limitations. *See Robbins v. DePaul University*, No. 13 C 06276, 2014 WL 7403381, at *2 (N.D. Ill. Dec. 29, 2014) (citing *Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 667 (7th Cir. 2014)). Indiana has a two-year personal injury statute of limitations that applies to Mojsoski's asserted Title VI cause of action. *See* Ind. Code § 34-11-2-4. When a Title VI action is brought in federal court, the claim is deemed to accrue when the plaintiff learns of his injury. *See United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)); *Robbins*, 2014 WL 7403381 at *2. As such, the relevant inquiry is the time at which the plaintiff discovers the injury, not when the plaintiff realizes he has a legal claim, *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 731 (N.D. Ill. 2014) (citing *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)), nor when the "consequences" of the unlawful act "become painful," *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *Robbins*, 2014 WL 7403381 at *2.

QB\73083994.3

Here, Mojsoski asserts that he was subjected to the following adverse actions: (1) he was required to revise and resubmit his portfolio on February 20, 2019; (2) he failed his first attempt at the comprehensive examination on March 19, 2019; (3) he failed his second attempt at the comprehensive examination on April 23, 2019; and (4) he failed his third and final attempt at the comprehensive examination on January 16, 2020. *See Agunbiade v. Chamberlain Coll. of Nursing*, No. 1:16-CV-1915-WTL-TAB, 2018 WL 4051879, at *7 (S.D. Ind. Aug. 24, 2018) (acknowledging the parties' agreement that the plaintiff suffered "adverse action" under Title VI when he failed two courses, resulting in his withdrawal from the college).  However, Mojsoski did not file his Complaint until January 14, 2022.  Accordingly, Mojsoski's claims based on any adverse action that took place before January 14, 2020, are time-barred by the two-year statute of limitations set forth in Ind. Code § 34-11-2-4.  As such, they must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Logan*, 644 F.3d at 582 ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").  Only the claim stemming from Mojsoski's third and final unsuccessful attempt at the comprehensive examination on January 16, 2020, survives the limitations bar—and barely, i.e., by two days.  The remainder of his claims must be dismissed because they fall outside of the applicable statute of limitations. *See Monroe v. Columbia Coll. Chicago*, 990 F.3d 1098, 1101 (7th Cir. 2021), *reh'g denied* (Apr. 12, 2021) (upholding summary judgment in favor of the college because the professor's Title VI claims fell outside of Illinois' two-year statute of limitations for personal injury claims).

### 2. Mojsoski's Complaint Fails to Sufficiently Allege Facts Supporting A Causal Relationship Between the Challenged Adverse Actions and a Discriminatory Motive

As noted above, a Title VI discriminatory intent claim, like a Title VII employment disparate treatment claim, must allege that a recipient intentionally treated persons differently or otherwise knowingly caused them harm *because* of their race, color, or national origin. *See Couch*, 843 F. Supp. 2d at 915. However, simply making a generalized assertion of such discrimination without pleading facts establishing a causal link between adverse action and discriminatory motive is insufficient to survive a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim. *See Mack v. City of High Springs*, 486 F. App'x 3, 7 (11th Cir. 2012) (dismissing *pro se* plaintiff's Title VI claims, in part because the plaintiff failed to sufficiently allege facts indicating that the claimed adverse action was based on his race, color, or national origin). As the Seventh Circuit recently articulated:

> [T]he Supreme Court has explained that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To be sure, although a plaintiff "need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). In the employment discrimination context, we have said these requirements mean a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics. *See Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

*Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (affirming dismissal of *pro se* Complaint pursuant to Fed. R. Civ. P. 12(b)(6), in part because the Complaint did not include any factual allegations that directly or indirectly connected the plaintiff's discharge with her age, race, or national origin).

The *Kaminski* decision is particularly instructive here. Kaminski was a white, Polish-American woman in her fifties and a former employee of Elite Staffing. *Id.* at 775. After Elite Staffing terminated Kaminski, she brought suit *pro se* under Title VII and the Age Discrimination in Employment Act ("ADEA"), alleging that Elite Staffing engaged in race, national origin, and age discrimination when it fired her. *Id.* Elite Staffing filed a motion to dismiss Kaminski's complaint, arguing that it did not plead a plausible claim of discrimination. *Id.* In rendering its decision that Kaminski's complaint indeed failed to state a claim upon which relief could be granted, the court explained that:

> At a high level of generality, all agree Kaminski alleges she lost her job because of her age, race, and national origin. But Rule 8 requires more. Beyond saying Elite Staffing wrongfully discharged her, Kaminski includes no factual allegations directly or indirectly connecting the termination with her national origin, age, or race. It is not enough for the complaint to observe only that federal law prohibits adverse employment actions on those grounds. There must be some facts that make the wrongful discharge contention plausible. *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019) (explaining that a plaintiff asserting a discrimination claim "cannot rely on … generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss").

*Id*. Because Kaminski failed to allege facts sufficient to establish the required causal nexus of her national origin, race, and age discrimination claims, the court affirmed dismissal of her complaint under Fed. R. Civ. P. 12(b)(6). *Id.* The court did so even despite the fact that Kaminski was a *pro se* litigant, and because of that having construed her complaint liberally. *Id.* ("Recognizing that Kaminski represents herself, and therefore construing her complaint liberally, we cannot conclude that her second amended complaint met these standards."); *see also O'Donnell v. Univ. of Chicago*, No. 01 C 5809, 2001 WL 1593141, at *4 (N.D. Ill. Dec. 13, 2001), *aff'd,* 45 F. App'x 524 (7th Cir. 2002) (dismissing the complaint of a *pro se* plaintiff who asserted a Title VI and Title IX claim in his complaint, but offered "nothing that would support

an inference of intentional discrimination based on race [(white)], sex [(male)] or national origin [(Irish-American)].").

Mojsoski's Complaint is similarly deficient. He alleges that he is "a white Eastern European male student attending the Department of Leadership Studies at Indiana Wesleyan University." (Dkt. 16 at ¶ 1). At a "high level of generality" (like the plaintiff in *Kaminski*), he also makes the conclusory assertions that "[t]his Civil Right lawsuit is pursued on behalf of Jonce Mojsoski, a white Eastern European male who has experienced severe, malicious, and racist treatment at the Department of Leadership Studies" and that "as a white Eastern European student, Plaintiff has experienced racist, unfair, and harmful interaction at Defendant, Department of Leadership Studies." (Dkt. 16 at ¶¶ 34, 35). He complains of having to resubmit his portfolio and of having failed his comprehensive examination three times. But Mojsoski's Complaint omits *critical* facts showing a causal relationship between these adverse actions and a discriminatory motive. In fact, the only thing Mojsoski specifically claims anyone from IWU did or said that had anything to do with race, color, or national origin is his allegation that in the fall of 2017, Dr. Barnes commented that "she was in Poland and [they] hated her for being a woman and black." (Dkt. 16 at ¶ 2). But Mojsoski alleges absolutely no facts connecting this comment by Dr. Barnes—that she felt discriminated against in Poland—with anything suggesting that she herself had any discriminatory motive against Mojsoski in grading his portfolio or evaluating his first two failed attempts at the comprehensive examination. *See e.g., Lemon v. Aurora Health Care N. Inc.*, No. 19-CV-1384, 2021 WL 689550, at *6 (E.D. Wis. Feb. 23, 2021) ("To sufficiently state a claim of intentional discrimination based on race, [the plaintiff] must assert facts, not conclusions, tying the defendants' actions to the plaintiff's race. The amended complaint, however, does nothing more than make a conclusory assertion that the

actions the hospital staff took were based on … [the plaintiff's] race. For these reasons, [the plaintiff's] amended complaint fails to state a claim under Title VI … .").

Moreover, as discussed above, the only adverse action Mojsoski asserts that is not barred by the two-year statute of limitations is his failed third attempt at the comprehensive examination on January 16, 2020. However—as Mojsoski admits in the Complaint—Dr. Barnes was no longer on his comprehensive examination committee at that time, as the entire committee had been replaced. (Dkt. 16 at ¶ 26). *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) ("[A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims."). Further, Mojsoski pleads no facts suggesting that anyone on the new comprehensive examination committee that evaluated his third failed attempt had any sort of discriminatory motive. *See Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 795 (7th Cir. 2006) (holding that a neurosurgeon failed to demonstrate that the medical center's reason for denying him active staff membership was a pretext for discrimination under Title VI, where the individual who made a derogative remark about the neurosurgeon's national origin years prior was not involved in the denial of active staff membership); *see also Sawyer,* 864 F. Supp. 2d at 720 (holding that the conduct of an instructor towards an African-American student, including her statement that "you people need to learn how to turn your work in on time" and refusing to accept a late assignment, was not connected to the suspension of the student because the instructor was not involved in decision to suspend student, and her statement could have referenced students in general). Having failed to allege facts evincing discriminatory causation, Mojsoski's claim fails to meet the requirements of Fed R. Civ. P. 8 and must be dismissed pursuant to Fed. R. Civ. P. 12(c).

### 3. Mojsoski Cannot Bring a Title VI Claim Against Dr. Barnes, Dr. Johnson, or Dr. Rennaker

Even if Mojsoski could bring a claim against IWU under Title VI, he cannot bring a claim against the individual defendants, Dr. Barnes, Dr. Johnson, and Dr. Rennaker. The implied private right of action under § 601 for intentional discrimination is actionable only against a recipient of federal grant money, not an individual. *See* 42 U.S.C. § 2000d *et seq.*; *see also Alexander*, 532 U.S. at 279-80; *see also Couch*, 843 F. Supp. 2d at 905 (holding that a multi-racial student's Title VI claims against school officials as individuals failed as a matter of law, because a private cause of action under Title VI can only be brought against recipient of federal grant money, not an individual). Indeed, the Seventh Circuit has held that Spending Clause statutes, like Title VI, cannot subject officials to suit in their individual capacities and cannot be interpreted as imposing individual liability on persons who do not, themselves, receive federal funds. *See Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009) (*abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149–50 (7th Cir. 2019)). Title VI invokes Congress's power under the Spending Clause to place conditions on the grant of federal funds (i.e., recipients of federal funds are prohibited from engaging in national origin, race, or color discrimination). *See Barnes v. Gorman*, 536 U.S. 181, 186 (2002). Because of this, courts regularly apply contract law principles in evaluating the scope of Title VI. *Id.* Just as a valid contract requires offer and acceptance of its terms, "[t]he legitimacy of Congress' power to legislate under the spending power ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 2 (1981)). Therefore, construing Title VI to provide for damages actions against officials in their individual capacities—who are not themselves "recipients" of federal funds, and therefore are not parties to the "contract" at issue —would raise serious questions regarding whether Congress had exceeded

its authority under the Spending Clause. *See Nelson*, 570 F.3d at 889. Mojsoski, therefore, cannot successfully assert a Title VI cause of action against individual defendants Dr. Barnes, Dr. Johnson, and Dr. Rennaker.

Additionally, and as this Court has explained, because the Seventh Circuit has held that a cause of action under Title IX may only be brought against the recipient of federal grant money—not an individual—Title VI claims brought against individually named defendants fail as a matter of law. Title IX is modeled after Title VI such that the two statutes operate in the same manner, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998), and "a decision with respect to one statute applies to the other statute," *Doe v. Galster*, No. 09–C–1089, 2011 WL 2784159, at *6 (E.D.Wis. July 14, 2011). *Couch*, 843 F. Supp. 2d at 905. Therefore, as the Seventh Circuit Court of Appeals has held that a plaintiff cannot maintain a Title IX action against a high school principal or assistant principal in either their individual or official capacities because a private cause of action under Title IX could only be brought against the recipient of federal grant money, *Smith*, 128 F.3d at 1019–21, this rule applies to Title VI claims as well, *see Roger C. ex rel. Gilbert v. Valley View Pub. Sch. Dist. No. 365–U*, No. 08 C 1254, 2008 WL 4866353, at *8 (N.D.Ill. June 23, 2008) (holding that "[b]ecause Section 2000d prohibits discrimination by recipients of federal funding, [ ] individual defendants cannot be held liable for violations of Title VI"). Accordingly, Title VI claims brought against individually named defendants fail as a matter of law. *Cf. Renguette v. Bd. of Sch. Tr. ex rel. Brownsburg Cmty. Sch. Corp.*, 540 F. Supp. 2d 1036, 1043 (S.D. Ind. 2008); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question … that individuals are not liable under Title VI."). Therefore, Mojsoski's Complaint fails to state a claim against Dr. Barnes, Dr. Johnson, and Dr. Rennaker, upon which relief can be granted.

### 4. Mojsoski's Complaint Fails to State An Actionable Claim for Punitive Damages, Which Are Not Available Under Title VI

Finally, even if the Complaint otherwise stated a claim upon which relief can be granted (which it does not), the Complaint fails to state a claim for punitive damages upon which relief can be granted as a matter of law. Although in his claim for relief Mojsoski seeks "[p]unitive damages of $150,000,000" (Dkt. 16 at ¶ 2-Relief), it is well established that punitive damages are not an available remedy under Title VI. More specifically, the United States Supreme Court in *Barnes* definitively stated that "punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act … ." 536 U.S. at 189. The Court explained that, because Title VI is a Spending Clause statute, through which recipients of federal funds in exchange agree to comply with federally imposed conditions, "[t]he legitimacy of Congress' power to legislate under the spending power ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the 'contract.' *Id.* at 186 (quoting *Pennhurst,* 451 U.S. at 2). Therefore, if Congress intends to impose a condition on the grant of federal moneys, it must do so "unambiguously." *Id.* The Court explained that because Title VI mentions no remedies, and because punitive damages are traditionally not available remedies for breach of contract claims, Title VI does not permit punitive damages. *Barnes*, 536 U.S. at 187. To that same end, the Court explained that it is "doubtful" a federal funding recipient would even have accepted the funding if punitive damages liability was a required condition. *Id.* at 188. In other words, Title VI funding recipients cannot be said to have implicitly consented to liability for punitive damages merely by accepting federal funds. *Id.* Accordingly, Mojsoski is not entitled to any punitive damages and his request for the same must be dismissed. *See e.g., Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 671 (2d Cir. 2012) (holding that Title VI provides a private right of damages action against a school district, which is only available for compensatory damages; there is no

remedy for punitive damages); *see also Alexander v. Underhill*, 416 F. Supp. 2d 999, 1005 (D. Nev. 2006) ("Plaintiffs have agreed to dismiss the individual defendants and the request for punitive damages pursuant to Title VI as Title VI does not provide for such relief."); *see also Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 790-92 (6th Cir. 1996) (collecting cases).

### IV. CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court grant them judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

QUARLES & BRADY LLP

By: */s/Edward E. Hollis*
Edward E. Hollis (#19402-49)
135 N. Pennsylvania Street
Suite 2400
Indianapolis, IN 46204
Tel: 317-957-5000
Edward.Hollis@quarles.com

Brenna M. Wildt
411 East Wisconsin Avenue
Suite 2400
Milwaukee, WI 53202-4428
Tel: 414-277-5328
Brenna.Wildt@quarles.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022, a copy of the foregoing *Defendants' Brief in Support of Their Motion for Judgement on the Pleadings* was filed electronically. Notice of this filing will be sent to the following *pro se* party by placing a copy in the first-class U.S. Mail. Parties may also access this filing through the Court's system.

    Jonce Mojsoski
    6910 Revere Road
    Parma Heights, OH 44130

By: */s/Edward E. Hollis*
    Edward E. Hollis (#19402-49)
    135 N. Pennsylvania Street
    Suite 2400
    Indianapolis, IN  46204
    Tel:  317-957-5000
    Edward.Hollis@quarles.com

    Brenna M. Wildt
    411 East Wisconsin Avenue
    Suite 2400
    Milwaukee, WI 53202-4428
    Tel:  414-277-5328
    Brenna.Wildt@quarles.com

*Attorneys for Defendants*