## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **JONCE MOJSOSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 1:22-cv-00019-SLC** |
| | ) | |
| **INDIANA WESLEYAN** | ) | |
| **UNIVERSITY,** *Department of Leadership* | ) | |
| *Studies, et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is a motion for judgment on the pleadings and supporting brief filed by Defendants Indiana Wesleyan University, Department of Leadership Studies ("IWU"); Joanne Barnes; Patricia Johnson; and Mark Rennaker. (ECF 18, 19). *Pro se* Plaintiff Jonce Mojsoski has filed a response brief in opposition to Defendants' motion. (ECF 23; *see also* ECF 22). Defendants have filed a reply brief (ECF 24), and thus, this motion is ripe for adjudication.[1] Defendants' motion will be GRANTED and Plaintiff's complaint will be DISMISSED for the reasons set forth below.

### I. LEGAL STANDARD

A motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), permits a party to move for judgment after the complaint and answer have been filed by the parties. Fed. R. Civ. P. 12(c). When ruling on a Rule 12(c) motion, a court must review the pleadings under the same standard governing motions to dismiss for failure to state a claim under Rule 12(b)(6). *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

---

[1] Federal question jurisdiction exists under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (ECF 20, 21).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)). A plaintiff is required to include allegations in the complaint that "plausibly suggest that [he] has a right to relief, raising that possibility above a 'speculative level'" and "if [he] do[es] not, the plaintiff pleads [himself] out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)). "As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citation omitted). However, the court "need not accept as true any legal assertions." *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016) (citation omitted). When a plaintiff is proceeding *pro se*, the court must liberally construe his pleading, *see Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), and *pro se* submissions are held "to a less stringent standard than formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted).

Finally, "[a] court may rule on a Rule 12(c) motion based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits." *United States ex rel. Howze v. Sleep Ctrs. of Fort Wayne, LLC*, No. 1:11-cv-00035-JD-SLC, 2017 WL 652179, at *5 (N.D. Ind. Feb. 1, 2017) (citation omitted). "[M]otions and memoranda are not pleadings," *Burlington Ins. Co. v. Phillips-Garrett, Inc.*, 37 F. Supp. 3d 1005, 1010 (S.D. Ill. 2014) (citation omitted), and, as such, courts "will not consider [a party's statement in a response brief] as

part of the pleadings in resolving [a] Rule 12(c) motion." *Flonder v. Sheriff of Kankakee Cnty.,* No. 12–2115, 2012 WL 4321714, at *3 (C.D. Ill. Aug. 31, 2012); see also *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 n.5 (7th Cir. 1998) ("Although [the plaintiff] encourages us through its brief and during oral arguments to consider facts outside the pleadings, we will not do so.").

## II. FACTUAL AND PROCEDURAL BACKGROUND

As a threshold matter, the Court notes that the new facts Mojsoski seeks to introduce in his opposition memorandum are not part of the pleadings because that document constitutes a brief. Thus, the facts introduced in his brief will not be considered for purposes of ruling on the motion for judgment on the pleadings before the Court.[2] The facts are, therefore, taken from Mojsoski's complaint, which are read in the light most favorable to him.

On January 14, 2022, Mojsoski, who is white and Eastern European, initiated this civil rights action *pro se* alleging Defendants discriminated against him while he was a PhD student at the Department of Leadership Studies (the "Department") of IWU. (ECF 1 ¶¶ 1, 30; ECF 16 ¶ 1; ECF 23 at 1).

In September 2017, Mojsoski enrolled in an online class taught by Defendant Barnes, a black professor at the Department. (ECF 1 ¶ 2). Within the first two months of his enrollment, Barnes shared with her class that, while in Poland, she was "hated [] for being a woman and black." (*Id.*). Mojsoski shared Barnes's comment with a peer on November 27, 2017, expressing concern about this statement. (*Id.*).

---

[2] Plaintiff did not submit any facts in evidentiary form, such as an affidavit under oath, so the Court need not consider converting the motion for judgment on the pleadings to a motion for summary judgment. *See Federated Mut. Ins. Co.*, 983 F.3d at 313; *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 453 n.5.

Barnes was one of two professors sitting on the Comprehensive Examination Committee ("Committee") with Defendant Johnson, another black professor at the Department. (*Id.* ¶ 8). The Committee was responsible for assessing Mojsoski's doctoral portfolio and subsequent Comprehensive Examination. (*Id.* ¶¶ 8, 13). For approximately ten months, Barnes failed to give Mojsoski feedback on his portfolio—which he had repeatedly requested—and she never gave him any thereafter. (*Id.* ¶¶ 3-7).

On October 5, 2018, in response to an email from Mojsoski, Defendant Rennaker, the Director of the Department, sent Mojsoski a copy of his portfolio graded by Barnes, which indicated that he had received a 240/250 score. (*Id.* ¶ 7). However, on February 1, 2019, Mojsoski was notified that his portfolio was graded "unacceptable" by the Committee. (*Id.* ¶ 8). Mojsoski subsequently revised the portfolio, which ultimately received a passing grade from the Committee on March 13, 2019. (*Id.* ¶¶ 9-12).

On March 19, 2019, Mojsoski took the Comprehensive Examination (an oral evaluation of his portfolio) for the first time, during which the Committee asked him questions unrelated to his portfolio and failed to record his presentation. (*Id.* ¶ 13). At the conclusion of the examination, Defendants Barnes and Johnson refused to give him a passing grade ("first failed attempt"). (*Id.* ¶ 15). This happened again on April 23, 2019, when Mojsoski took the examination for the second time ("second failed attempt"). (*Id.* ¶¶ 15, 20). Unlike for the first examination, however, Johnson told Mojsoski that he could not take notes during the second examination, which Mojsoski alleges violated the Department's policy. (*Id.* ¶ 15). Additionally, Mojsoski did not receive the scheduling accommodations he had requested. (*Id.* ¶¶ 17-18). Again, the professors did not record Mojsoski's presentation, and they continued to ask him questions unrelated to his portfolio during the second examination. (*Id.* ¶ 19).

4

Two days later, Mojsoski approached Rennaker and asked him about the possibility of appealing his grade through the grade appeal process. (*Id.* ¶ 21). Rennaker discouraged him from pursuing this course of action, stating that no student had been successful in the past. (*Id.*). Following Mojsoski's submission of a grade appeal report and an investigation by a deputy Title IX officer, Mojsoski was, however, allowed to take the examination a third time, this time with a Committee composed of new members. (*Id.* ¶¶ 23, 26). Despite receiving positive feedback on the examination, Mojsoski failed a third time on January 16, 2020 ("third failed attempt"). (*Id.* ¶ 29).

As a result of the allegations mentioned above, Mojsoski claims that he has experienced "severe, malicious, and racist treatment," and that "[the Department] failed to provide a safe non-discriminatory learning and general environment." (*Id.* ¶ 34). He claims that he has suffered "psychological and emotional harm, pain, suffering, mental anguish, fear, stress, and life-threatening incurrences." (*Id.* ¶ 35). Consequently, he is suing Barnes, Johnson, and Rennaker in their individual and official capacities, in addition to the Department of Leadership Studies of IWU. (*Id.* at 1). Mojsoski brings a "[c]ivil [r]ights lawsuit" without alleging any violation of a specific law or statute, and now seeks (1) compensatory damages, (2) punitive damages of $150,000,000, (3) an award for reasonable *pro se* fees and litigation expenses, (4) other relief the Court considers appropriate, and (5) an injunction against Defendants' alleged unlawful practices against others similarly situated. (*Id.* at 5, 6).

Defendants have moved for judgment on the pleadings (ECF 18), arguing that the Court should find in their favor because (1) nearly every claimed adverse action in the pleadings is time-barred by the applicable statute of limitations, (2) Mojsoski's complaint fails to sufficiently allege facts supporting a causal relationship between the challenged adverse actions and discriminatory motive, (3) Mojsoski cannot bring a Title VI claim against Barnes, Johnson, or Rennaker in their individual or

official capacities, and (4) Mojsoski's complaint fails to state an actionable claim for punitive and emotional distress damages, which are not available under Title VI. (ECF 19 at 2; ECF 24 at 8). In his opposition brief, Mojsoski does not address these points but sets forth additional facts, which he alleges support his legally cognizable discrimination claims. (ECF 23). Mojsoski also requests in his brief that the Court "strike" his demand for punitive damages. (ECF 22; ECF 23 at 6). The Court addresses these arguments in turn.

## III. ANALYSIS

Mojsoski does not contest in his opposition memorandum Defendants' assumption that the applicable statute for this case is Title VI of the Civil Rights Act ("Title VI"). (ECF 19 at 2 ("Mojsoski apparently attempts to assert a claim under Title VI of the Civil Rights Act of 1964 . . . ."); *see also* ECF 23 at 6 (acknowledging the "applicable" two-year statute of limitations)). Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI is the appropriate mechanism for bringing race and national origin discrimination claims in a school setting." *Roger C. ex rel. Gilbert v. Valley View Pub. Sch. Dist. No. 365-U*, No. 08 C 1254, 2008 WL 4866353, at *8 (N.D. Ill. June 23, 2008) (citation omitted). Because Mojsoski asserts that "as a white Eastern European," he has suffered from "racist, harmful, and unfair" treatment under the auspices of IWU, the Court finds that Title VI is an appropriate legal standard under which to analyze the motion for judgment on the pleadings.

## A. Statute of Limitations

Defendants first argue that most of Mojsoski's claims are time-barred by Title VI's statute of limitations. (ECF 19 at 7). The Court finds that Mojsoski's claims in their *entirety* are time-barred.

### 1. Legal Standard

The running of the statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). "While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (internal quotation marks omitted). It is appropriate to consider dismissal based on the statute of limitations in a Rule 12(b)(6) motion when the relevant dates set forth in the complaint are unambiguous. *Id.* As such, a plaintiff may "plead[ ] himself out of court" by admitting all of the essential elements of an affirmative defense in his complaint. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022) (alteration in original).

Although Title VI does not make a reference to a statute of limitations, the law in this Circuit is clear—and Mojsoski concedes[3]—that the applicable statute of limitations is two years. The statute of limitations in Title VI actions is the "limitations period that a state has specified for personal injury claims." *Monroe v. Columbia Coll. Chi.*, 990 F.3d 1098, 1099 (7th Cir. 2021). In Indiana, this time period is two years after the cause of action accrues. Ind. Code § 34-11-2-4. Therefore, any claim that accrued before January 14, 2020, is time-barred.

Despite agreeing that the statute of limitations is two years, Mojsoski asserts that his claims are not time-barred. When a claim is brought in federal court, "[it] accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Wilson v. Giesen*, 956 F.2d 738, 740

---

[3] (ECF 23 at 6 (asserting that the "applicable two-year statute of limitation[s]" does not bar his claims)).

(7th Cir. 1992); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) ("The period begins to run when the employee knows he has been injured, not when he determines that the injury was unlawful." (citation and internal quotation marks omitted)); *Rogers v. Allen Superior Ct.*, No. 1:16-CV-40-TLS, 2017 WL 879635, at *3 (N.D. Ind. Mar. 6, 2017) ("Determining when the Plaintiff's claim accrued, i.e., when the two-year period began to run, is determined by federal law."). Further, a claim cannot accrue each time an alleged discriminatory act is not remedied: "[a] refusal to undo a discriminatory decision is not a fresh act of discrimination," *Allen Superior Ct.*, 2017 WL 879635, at *3 (citing *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992)), nor can it be considered a "separate [act] from the initial refusal," *id.* at *4. As such, a defendant's continued failure to cure an alleged discriminatory act does not renew the statute of limitations, nor does it mean that the claim accrues at that time. *Id.* at *3-4.

Acts considered "continuing violations," on the other hand, may attach to acts falling within the statute of limitations, when they, themselves, would otherwise be time-barred. *See generally Selan v. Kiley*, 969 F.2d 560 (7th Cir. 1992). "[T]he Seventh Circuit has . . . made it clear that the continuing-violation doctrine is only applicable where the plaintiff could not reasonably be expected to perceive the violation before the statutory period has run." *Easton v. Coll. of Lake Cnty.*, 584 F. Supp. 2d 1069, 1074 (N.D. Ill. 2008) (citing *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006)). The doctrine requires that the "character" of the violation "did not become clear until it was repeated during the limitations period." *Stepney*, 392 F.3d at 240 (citation and quotation marks omitted) (finding that "the character of [the plaintiff's] transfer and loss of seniority was apparent immediately and is not alleged to have changed through duration or repetition."); *see also Stewart v. CPC Int'l, Inc.,* 679 F.2d 117, 120-21 (7th Cir. 1982) (a continuing violation is applicable when the decision-making process "mak[es] it difficult to pinpoint the exact day the 'violation' occurred" (citations omitted)). In the employment

context, "a denial of reinstatement may constitute a distinct discriminatory act if new elements of unfairness, not existing at the time of the original violation, attached to [the] denial of re-employment." *Dertz v. City of Chicago*, No. 94 C 592, 1997 WL 85169, at *5 (N.D. Ill. Feb. 24, 1997) (citation and quotation marks omitted). Finally, when a person has decision-making power to take an adverse employment action and makes a final decision that is not a "mere recommendation," the cause of action accrues when such decision is communicated, even though it is subject to appeal. *Gorski v. Lewis Univ.*, No. 99 C 5244, 1999 WL 1250192, at *2 (N.D. Ill. Dec. 22, 1999) (explaining the outcome in *Lever*).

*2. Analysis*

According to his opposition memorandum, Mojsoski makes "two cognizable legal claims." (ECF 23 at 6). Namely, Mojsoski claims that (1) "Barnes discriminated against [him] as a retaliation for her experience in Poland," and that (2) the Department, through its director Rennaker, "failed to take necessary steps to eliminate discrimination in the educational institution." (*Id.*). Essentially, Mojsoski claims that Barnes was the source of a discriminatory act, and that Rennaker and the Department refused to undo Barnes's discriminatory decision. The Court, therefore, identifies six relevant alleged events tying Mojsoski's claims under Title VI to the named Defendants: (1) Barnes commenting sometime between September 2017 and November 27, 2017, that she was hated in Poland for being black and being a woman; (2) Barnes's lack of feedback on Mojsoski's portfolio between November 3, 2017, and August 13, 2018; (3) Barnes and Johnson grading Mojsoski's portfolio as "unacceptable" on February 1, 2019; (4) Barnes and Johnson refusing to give a passing grade to Mojsoski after his first two attempts at the Comprehension Examination on March 19, 2019, and on April 23, 2019; (5) Rennaker's comments about the grade appeal process made on April 25, 2019; and

(6) the new Committee members' refusal to give a passing grade to Mojsoski on his third attempt at the examination on January 16, 2020.

The first five alleged acts are all time-barred because they unambiguously occurred before January 14, 2020. This leaves one act able to potentially form the basis of a Title VI action: the third failed attempt which occurred on January 16, 2020. However, the Court finds that the third failed attempt cannot be considered a separate act from the initial two failed attempts at the examination, even though it occurred before the statute of limitations expired. This is because the third failed attempt is not a "fresh act of discrimination." *Allen Superior Ct.*, 2017 WL 879635, at *3.

The Committee change and the existence of a recording evidencing positive feedback on the third examination does not make it a separate act from the first two failed attempts. The act—namely the refusal to give Mojsoski a passing grade—is in most aspects the same as the first two examinations, where Mojsoski was questioned on his portfolio and where, according to him in his opposition memorandum, racial discrimination continued to occur. (*See* ECF 23 at 6 ("Rennaker. . . was informed of the issues and did not prevent the incident.")). In effect, Mojsoski is "firmly convinced" that discrimination continued when two new professors replaced Barnes and Johnson on the Committee because Rennaker "could influence" the new Committee "to protect himself and defendants Joanne Barnes and Patricia Johnson from ongoing complaint in the appeal." (*Id.* at 6-7). In this sense, the complaint could be read as alleging that the appointment of a new Committee was a continuation of the initial discrimination, and that the new Committee did discriminate against him anyway, constituting, in effect, "a refusal to undo a discriminatory decision," which does not provide the basis for a "fresh act of discrimination" within the statute of limitations. *Allen Superior Ct.*, 2017 WL 879635, at *3; *see also Wilson*, 956 F.2d at 740.

To the extent Mojsoski argues the third failed attempt is the result of a continuing violation stemming from the first two attempts, the Court disagrees. The continuing-violation doctrine is not applicable here because Mojsoski could reasonably be expected to perceive the violation before the statutory period has run. *See Easton*, 584 F. Supp. 2d at 1074. Specifically, he was denied a passing grade (twice) after expressing concerns about Barnes's alleged discriminatory comment (ECF 1 ¶¶ 2, 15, 20) and after suffering from mental anguish and emotional distress (*Id.* ¶¶ 24, 27-28)—all before the statutory period began. As such, the character of the violation did become clear to Mojsoski before the limitations period started and did not change through duration nor repetition. *See Stepney*, 392 F.3d at 240. The "exact day" the violation occurred was clear when Mojsoski failed on March 19, 2019, and on April 23, 2019. The third failed attempt did not make the "exact day" of the violation any clearer. *Stewart,* 679 F.2d at 120-21. Moreover, no new elements of unfairness attached to the denial to undo the grade the third time around. *See id.*; *Dertz*, 1997 WL 85169, at *5.

Further, that Mojsoski pursued a grade appeal within IWU after the second failed attempt does not make the Department's first two decisions to fail him any less final. Barnes's and Johnson's decisions to fail Mojsoski were not 'mere recommendation[s].' *Gorski*, 1999 WL 1250192, at *2. Barnes and Johnson both had the authority to fail Mojsoski as members of the Committee, and each decision was final. As explained in *Gorski*, the appealability of each decision does not mean that the statutory clock started when Mojsoski went through the appeal process. *Id.* ("The dean's decision was not a mere recommendation to the provost; it was final even though subject to appeal.").

Regardless, because Mojsoski "has presented no arguments to this [C]ourt that Defendant[s'] alleged violations should be characterized as continuous. . . [the] continuing violation argument cannot prevail." *Nair v. Bank of Am. Ill.*, 991 F. Supp. 940, 956 (N.D. Ill. 1997) (citing cases). The claim against Rennaker is merely a failure to undo a discriminatory decision, thus, it cannot be on its own a

legally cognizable claim against him. And because the only discriminatory act occurring during the statute of limitations is not a new and separate one from the acts falling outside the statute of limitations, it cannot support a cognizable claim against Defendants.[4] These two "cognizable legal claims" are, however, the only claims that Mojsoski identifies in his opposition memorandum. (ECF 23 at 6). The first two failed attempts occurring respectively on March 19, 2019, and on April 23, 2019, fall outside the scope of the statute of limitations.[5] So does the third failed attempt, which is a mere refusal to undo the discriminatory acts occurring in 2019.

Further, while the Court finds that all the alleged acts occurred before the statute of limitations, Mojsoski does not argue (and he could not) that he first learned about his injury *after* the acts occurred but *before* the statute of limitations expired. Mojsoski alleges that he began to suffer from health problems associated with his first failed attempt in March 2019. (ECF 1 ¶ 14 ("After the first Comprehensive Examination, Plaintiff started using professional medical help to cope with immense stress and anxiety.")). He continued treatment "[d]ue to the stress and anxiety from the discrimination and related injustice" in June 2019. (ECF 1 ¶ 24; *see also* ECF 1 ¶ 27 ("Plaintiff was warned by the medical professional about the severe consequences of the immense stress and anxiety.")). Therefore, the complaint makes clear that Mojsoski knew or had reason to know that his injury accrued when he started suffering from health problems, at least as of March 2019 or June 2019, which predates the statute of limitations. *Wilson*, 956 F.2d at 740 (a claim "accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action").

---

[4] Even assuming that the third examination is a separate act of discrimination, this act alone is not enough, as discussed *infra*, for a cognizable legal claim to accrue.

[5] In fact, the relevant date of the second comprehensive examination should be the same as the first one because the second examination is also a "refusal to undo a discriminatory decision," much like in *Allen Superior Court*.

Alternatively, and in giving Mojsoski the benefit of inferences, if the Court was to view Mojsoski's claim as alleging that Rennaker deliberately ignored the alleged discrimination (more on that later), the third failed attempt could still not constitute a fresh discriminatory act. Assuming Rennaker knew of the alleged discrimination, Rennaker responded to Mojsoski each time he was solicited. This occurred (1) when Rennaker gave Mojsoski the portfolio and the feedback the latter requested, (2) when Rennaker informed Mojsoski of the (historically unsuccessful) grade appeal process, and (3) when the Committee was replaced by new members after Mojsoski filed a grade appeal.

Beyond the facts alleged in his complaint, and despite Mojsoski's plain statement in his opposition memorandum that the alleged acts "are not time-barred" (ECF 23 at 6), he does not plead any facts indicating that the statute of limitations should attach to new relevant acts occurring two years before the commencement of this action, that he did not know of the alleged injuries, or that the statute of limitations should be tolled. "Clearly meritorious [affirmative defenses] form the basis of a motion on the pleadings under Rule 12(c). . . ." *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). "[W]hen the allegations of the complaint reveal that relief is barred, dismissal is appropriate." *Doe v. Bd. of Educ. for Sycamore Cmty. H.S. Dist. # 427*, No. 17 C 50389, 2018 WL 11212648, at *2 (N.D. Ill. Nov. 16, 2018). In conclusion, because the relevant acts for the civil rights action alleged in Mojsoski's complaint are time-barred, he has pleaded himself out of court by setting forth "everything necessary to satisfy the [statute of limitations] affirmative defense." *Brooks*, 578 F.3d at 579. The Court nevertheless analyzes Defendants' remaining arguments for completeness of the record.

## B. Discriminatory Motive

Defendants assert that to be successful in a private action under Title VI, a plaintiff must prove intentional discrimination, and as such, Mojsoski must allege that the adverse action was caused by

13

discriminatory motive. (ECF 19 at 6). Further, Defendants assert that intentional discrimination claims must be analyzed using the *McDonnell-Douglas* framework borrowed from employment discrimination jurisprudence. (*Id.*). Therefore, in addition to arguing that the statute of limitations bars most of Mojsoski's claims, Defendants contend that any claims based on facts not excluded by the statute of limitations cannot establish a nexus between the adverse actions and a discriminatory motive. (*Id.* at 10-11). In response, Mojsoski clarifies that he "raised two cognizable legal claims" in his complaint, namely that (1) "Barnes discriminated against [him] as a retaliation for her experience in Poland," and that (2) Rennaker "failed to take necessary steps to eliminate discrimination in the educational institution." (ECF 23 at 6). These claims seemingly allege intentional discrimination and are analyzed below.

*1. Legal Standard*

Courts in this Circuit have clarified that Title VI can only be brought as intentional discrimination claims, *Su v. E. Ill. Univ.*, 565 F. App'x 520, 521 (7th Cir. 2014) ("[Title VI] . . . prohibits only intentional discrimination . . . ."), and those have historically been treated as analogous to other discrimination actions such as those established by Title VII and Title IX of the Civil Rights Act ("Title VII" and "Title IX"). Claims under Title IX are particularly similar to claims under Title VI. *Students & Parents for Priv. v. Sch. Dir. of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 900 (N.D. Ill. 2019). In fact, Title VI and Title IX are so similar that "a decision interpreting one generally applies to the other." *Smith v. Luteran Univ. Ass'n Inc.*, No. 2:21-CV-178-TLS-JPK, 2021 WL 4902492, at *3 (N.D. Ind. Oct. 21, 2021) (quoting *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014)).[6] But Title VII claims also bear weight on Title VI and Title IX analysis. *Whitaker v. Kenosha Unified*

---

[6] Because the case name contains an error in the defendant's name, the Court will cite this case going forward as *Smith v. Lutheran Univ. Ass'n Inc.*, No. 2:21-CV-178-TLS-JPK, 2021 WL 4902492, at *3 (N.D. Ind. Oct. 21, 2021).

*Sch. Dist. No. 1 Bd. of Ed.*, 858 F.3d 1034, 1047 (7th Cir. 2017) ("[The Seventh Circuit] has looked to Title VII when construing Title IX."), *abrogated on other grounds by Ill. Republican Party v. Pritzker*, 973 F.3d 760, 761-62 (7th Cir. 2020); *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 721 (N.D. Ill. 2015) ("Trial courts in [the Northern District of Illinois] have followed [the] same approach" as Title VII decisions when analyzing pleading standards. (citing *Jackson v. N. Ill. Univ. Coll. of Law*, No. 10 C 01994, 2010 WL 4928880, at *1 (N.D. Ill. Nov. 30, 2010))).

While the *McDonnell-Douglas* framework—borrowed from employment discrimination law— does apply to Title VI claims, "the pleading standards . . . are different from the evidentiary burden a plaintiff must subsequently meet when using the [*McDonnell-Douglas* framework]." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). "As is true of claims under Title VII, the Seventh Circuit has emphasized in a Title VI case that there is no heightened pleading requirement in Rule 8 for discrimination cases." *Students & Parents for Priv.*, 377 F. Supp. 3d at 900 (citation, internal quotation marks, and bold emphasis omitted); *see also Su*, 565 F. App'x. at 521-22 (reversing dismissal of a Title VI claim because "actual knowledge of the discrimination" or defendant's "authority to address the discrimination" are evidentiary elements of *McDonnell-Douglas* framework, not the pleading standard for Title VI claims).

With that said, when *pleading* a discrimination claim, a plaintiff "need only identify a challenged action and allege that the defendant acted because of [his] race." *Resendez v. Prance*, No. 3:16-cv-862 JD, 2018 WL 1531788, at *4 (N.D. Ind. Mar. 29, 2018) (citations omitted); *see Su*, 565 F. App'x at 521-22 (describing the motion to dismiss standard for Title VI claims); *see also Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007) (elements of the *McDonnell-Douglas* framework set forth the evidentiary standard, not the pleading standard). Therefore, "the legal standard . . . 'is simply whether the evidence would permit a reasonable factfinder to conclude that the

plaintiff's race, ethnicity, sex, religion, or other proscribed factor *caused* the discharge or other adverse action.'" *Rosas v. Bd. of Educ. of the City of Chi.*, No. 19-cv-2778, 2021 WL 1962397, at *14 (N.D. Ill. May 17, 2021) (citation omitted) (applying this reasoning to a Title VI claim). Put simply, "[t]he allegation must be accompanied by facts sufficient to raise an inference of discriminatory intent," and as such, plaintiffs cannot make conclusory statements about discriminatory intent. *Kass-Hout v. Cmty. Care Network Inc.*, No. 2:20-CV-441-JPK, 2021 WL 3709635, at *9 (N.D. Ind. Aug. 20, 2021) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 886 (7th Cir. 2012)); *Khan*, 417 F. Supp. 3d at 720-21 (adopting *McReynolds* framework for Title VI pleading requirements); *see also Iqbal*, 556 U.S. at 679.

*2. Analysis*

To successfully plead an intentional discrimination claim, Title VI requires that Mojsoski allege facts showing that he suffered adverse actions because of his race or national origin. As discussed *supra*, none of the facts alleged to sustain a Title VI action fall within the statute of limitations, including the third failed attempt at the examination. However, even if the Court entertains that the third failed attempt constitutes a separate act of discrimination falling within the statute of limitations, it fails to meet the pleading standard.

i.  Mojsoski's third failed attempt cannot be explained by Barnes's and Johnson's discriminatory intent.

The third failed attempt cannot support Mojsoski's first "cognizable legal claim" against Barnes. Barnes could not have discriminated against Mojsoski if she was no longer a member of the Committee responsible for failing him at the third comprehensive examination. Mojsoski does not link Barnes's supposed animus against him as a white Eastern European to the new Committee's decision

to fail him after the third examination. As such, Mojsoski's failure to pass the examination cannot be plausibly explained by Barnes's discriminatory intent.

Mojsoski articulates his claim as a consequence of Barnes's retaliatory act and Rennaker's alleged failure to remedy the discrimination perpetrated by Barnes. However, Mojsoski does not articulate why he is suing Johnson in her individual and official capacity. That is all the more surprising considering the following facts: Johnson was a part of the Committee which did not pass Mojsoski's portfolio, although Barnes, when grading it herself, gave it a 240/250 score (ECF 1 ¶¶ 7, 8); Johnson was the one who informed Mojsoski that he could not take notes during the second examination (*id.* ¶ 15); she equally as Barnes refused to accommodate Mojsoski to meet at a different time than offered (*id.* ¶¶ 17-18) and refused to give Mojsoski a passing grade during both examinations (*id.* ¶¶ 15, 20); and she just as much as Barnes asked Mojsoski questions that were unrelated to his portfolio (*id.* ¶¶ 13, 19). Johnson's involvement in Mojsoski's failure to pass the first two examinations (and his initial failure to obtain a passing grade on his portfolio) is almost tantamount to that of Barnes. Yet, if Mojsoski cannot formulate a claim against Johnson, it is because there are no indicia of discriminatory intent on her part. In fact, Johnson's actions in concert with Barnes's negate the allegation that Mojsoski failed because of Barnes's discriminatory intent. Finally, even if the Court assumed that Johnson was biased toward Mojsoski, she also was not a part of the Committee that failed him the third time. Therefore, Mojsoski's third failed attempt cannot be explained by Johnson's intent either.

ii.   <u>Mojsoski's third failed attempt cannot be explained by Rennaker's discriminatory intent.</u>

Likewise, the third failed attempt cannot support Mojsoski's claim against Rennaker alleging that he failed to eliminate discrimination.

Focusing on the circumstances of the third failed attempt without taking into account the time-barred facts shows that Rennaker did attempt to eliminate discrimination. Mojsoski was given a third chance to take the examination, even though no student had been successful in the grade appeal process. (ECF 1 ¶ 21). Further, a different Committee was appointed after Mojsoski complained about Barnes and Johnson. (*Id.* ¶ 26). Those acts do not show discriminatory intent, in fact they show just the opposite. If anything, the circumstances of the third failed attempt demonstrate that the person allegedly responsible for the discrimination (Barnes) was removed from the decision-making process.

Instead, in support of his claim that the third failed attempt was the result of discrimination, Mojsoski argues that, in a conspiracy-like fashion, Rennaker influenced the new Committee members to protect himself, Barnes, and Johnson. (ECF 23 at 6). However, Mojsoski does not allege that Rennaker *himself* acted out of racial or national origin animus. Even if we were to assume Rennaker did influence the professors to protect Barnes and Johnson, this influence, at least as alleged, was not the result of Rennaker's own resentment for Mojsoski's race or national origin. Instead, it would have to be because of Barnes's own alleged bias toward Mojsoski's race or national origin, which, again, the Court can only discern from Barnes's comments made in 2017, beyond the statute of limitations. (ECF 1 ¶ 2).

Further, in *Smith v. Lutheran University*, this Court remarked that to sustain a claim under Title VI, a plaintiff could not allege "that two professors and an advisor conspired to deprive [plaintiff] of his right to an education and his civil rights under Title VI," when plaintiff did "not describ[e] [the] conspiracy except to say that it exists" nor describe "discriminatory action connected to th[e] conspiracy." 2021 WL 4902492, at *4. Accordingly, such "conspiracy claim" fails to state grounds for relief under Title VI. *Id.* Similarly, Mojsoski does not allege that Rennaker had the power to influence the new Committee, nor how Rennaker could have influenced those professors, nor why Rennaker

would be in cahoots with Barnes and Johnson to protect them. The statement that Rennaker "decided to fail the Plaintiff on the third [] exam to protect himself and defendants Joanne Barnes and Patricia Johnson from the ongoing complaint in the appeal" is, by itself, conclusory and likewise fails to state grounds for relief. (ECF 23 at 6-7). The Court also notes that the conspiracy-like claim that Rennaker influenced the new Committee is elaborated in Mojsoski's opposition memorandum, rather than his complaint. Again, parties cannot introduce facts outside the complaint in a judgment on the pleadings motion to oppose said motion. *United States ex rel. Howze*, 2017 WL 652179, at *5.

To the extent Mojsoski is claiming that Rennaker ignored Mojsoski's claim of discrimination in his complaint, the former does not allege any acts that plausibly suggest Rennaker was indifferent to his claims. As noted above in Part III.A., the complaint only makes two mentions of Rennaker, which relate to (1) him sending a copy of the portfolio's grade to Mojsoski, which Barnes never sent, and (2) him discouraging Mojsoski from engaging in a grade appeal process which was never successful for past students (ECF 1 ¶¶ 5-7, 21), acts which are time-barred anyway. Thus, those acts do not plausibly allege indifference. *See Galster*, 768 F.3d at 620 (school district and administrators were not indifferent in responding to alleged discrimination based on race and national origin under Title VI when, among other actions, student was assigned to different study groups).

Relatedly, Mojsoski's claim against Rennaker depends on his first claim against Barnes. If this Court cannot find that Barnes discriminated against Mojsoski because those acts fell outside the statute of limitations, Rennaker cannot be found to have failed to prevent discrimination caused by Barnes. Because Mojsoski's claim against Barnes fails, so does the one against Rennaker. Further, even if Rennaker's claim did not depend on Mojsoski's claim against Barnes, it would fail because Mojsoski does not plausibly allege a conspiracy or that Rennaker deliberately ignored his complaints. In sum,

Rennaker's discriminatory intent did not cause the third failed attempt, nor can the facts alleged support Mojsoski's "second cognizable legal claim" that Rennaker failed to remedy discrimination.

iii.    Mojsoski's third failed attempt cannot be explained by the new Committee's discriminatory intent.

The complaint does not allege—nor does the opposition memorandum clarify—that the Committee professors at the third failed attempt were motivated to fail Mojsoski because of his race or national origin. Again, the only act relating to Mojsoski's protected status occurred when Barnes made a comment sometime between September 2017 and November 27, 2017, about being hated when in Poland because she was black and a woman. But Barnes did not serve on the Committee the third time around. The introduction of new Committee members severed the link between Barnes's supposed discriminatory motive and the decision to fail Mojsoski, such that if there was any discriminatory motive, the only motive that would matter is that of the new Committee members. The complaint alleges that the professors "were responding that the responses were great" during the examination (ECF 1 ¶ 29), but Mojsoski claims—again, in his response brief—that the professors failed to give him feedback on the reasons for which he failed the third examination. (ECF 23 at 7 ("[T]here was no vital feedback on why [the new Committee] failed Plaintiff.")). But Mojsoski does not allege that the new Committee professors had discriminatory intent, and as the Court discussed above, the conspiracy-like claim that Rennaker influenced the new committee fails to state grounds for relief and should not be considered for failure to be brought in the complaint as opposed to the brief. Therefore, the third failed attempt cannot be explained by the new Committee's discriminatory intent either.

iv.  <u>Mojsoski's third failed attempt cannot be explained by the discriminatory intent of any other employee at IWU.</u>

Finally, Mojsoski cannot plausibly allege that his third failed attempt was motivated by any of the named individuals or the third Committee's discriminatory intent. Nor does the complaint plausibly allege that the remaining individuals who are employed by IWU had discriminatory intent and caused Mojsoski to fail at the third attempt.

The remaining officials appearing in Mojsoski's complaint are Carson Castleman, Deputy Title XI Officer; Amy Car, Administrative Assistant at the Department; Mike Mendenhall, Assistant Director of Academic Affairs; and Matter Shawn, University Counsel. All were involved in addressing Mojsoski's issues. Castleman conducted an investigation after Mojsoski failed his second time around (ECF 1 ¶ 23), and thereafter, Mojsoski was allowed to proceed with a third attempt at the examination, which was announced by Mendenhall (*id.* ¶ 26). Additionally, Amy Car was not involved in the decision to fail Mojsoski, but only communicated outcomes which were seemingly decided by others. (*Id.* ¶¶ 8, 10, 32). Shawn informed Mojsoski that he would be reimbursed for his second semester in 2020, although Mojsoski was previously told that he could not receive a refund. (*Id.* ¶¶ 32-33). Even if any of those employees had motive to discriminate Mojsoski, which on the face of the complaint seems unlikely especially as to Castleman and Mendenhall, it could not explain why he failed at the third attempt: none of those employees had any involvement in that decision. Therefore, Mojsoski's claim against IWU does not plausibly allege that Mojsoski's failure to pass after his third attempt is attributable to the discriminatory intent of any of IWU's employees. Without more, Mojsoski's claims are conclusory, and as such, do not meet the threshold required to survive a motion to dismiss.

### C. Suit Against Individual Parties

Next, Defendants assert that Mojsoski cannot sue Barnes, Johnson, and Rennaker in their individual and official capacities because doing so would contravene the language of Title VI and the Constitution's Spending Clause, which provide that a suit may be instituted against a recipient of federal funding, not an individual.

Courts in the Seventh Circuit have recognized that suits against individuals are barred unless the individuals themselves receive federal grant money. *Rogers v. Off. of the Att'y Gen.*, No. 1:16-CV-429-TLS, 2017 WL 2864950, at *2, 3 (N.D. Ind. July 5, 2017); *Valley View*, 2008 WL 4866353, at *8 ("Because Section 2000d prohibits discrimination by recipients of federal funding, . . . individual defendants cannot be held liable for violations of Title VI." (citing *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1018-19 (7th Cir. 1997) (applying this rule in a Title IX case))); *Patterson v. Mclean Cnty. Sheriff's Dep't*, No. 1:20-cv-01073, 2021 WL 2403436, at *9 (C.D. Ill. June 11, 2021) (allowing plaintiff to replead if the named individual defendants in a Title VI action are "the rare individuals who themselves receive federal grant money"). An individual does not become a recipient of federal funds merely because that individual is employed by the defendant. *Off. of the Att'y Gen.*, 2017 WL 2864950, at *2-3; *see also Hendrichsen v. Ball State Univ.*, 107 F. App'x 680, 683-84 (7th Cir. 2004) (dismissing suit against college professor in his individual capacity).

Courts have been consistent in their conclusions that employees may not be sued in their official capacity either. *E.g.*, *Metro. Sch. Dist.*, 128 F.3d at 1020 (Title IX); *Freeman v. Molding Prods.*, No. 3:19-CV-70 RLM-MGG, 2019 WL 2300541, at *1 (N.D. Ind. May 30, 2019) (citing *Aku v. Chi. Bd. of Educ.*, 290 F. Supp. 3d 852, 860 (N.D. Ill 2017) (dismissing Title VII official capacity claims against school principal because they were redundant of claims against the School Board)). Those conclusions are also consistent with other civil rights claims. *E.g.*, *Sow v. Fortville Police Dep't*,

636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent" in 42 U.S.C. §§ 1982, 1985, 1986 civil rights claim.). Though often decided in the context of analogous statutes such as Title VII and Title IX, those cases are relevant to Title VI actions. *Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 258-59 (2009); *Galster*, 768 F.3d at 617 ("Title VI and Title IX are so similar that a decision interpreting one generally applies to the other."); *Doe v. Smith,* 470 F.3d 331, 338 (7th Cir. 2006) (Title VI and Title IX "both condition ... an offer of federal funding on a promise by the recipient not to discriminate," as such they are interpreted in the same manner), *abrogated on other grounds by Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). Therefore, courts have consistently held that in discrimination-based civil rights actions, a defendant's employees cannot be sued in their official capacity because doing so would be redundant of suing the employer itself.

Here, Barnes, Johnson, and Rennaker are all employees of IWU and the Department. As such, their status cannot form the basis of Title VI liability. As in *Hendrichsen*, Barnes and Johnson are college professors and their refusal to pass Mojsoski during his first two examinations occurred during the course of their employment at the Department. *Hendrichsen*, 107 F. App'x at 683-84. So did Rennaker's comment about students' past failures to overturn a grade during the appeal process. The complaint and Mojsoski's opposition memorandum do not indicate that any of those individuals received federal grant money directly. Mojsoski seemingly claims that the acts of those three individuals fostered a discriminatory environment, which impacted how other employees at the Department (such as the new Committee members) treated Mojsoski. (ECF 1 ¶ 34). Allowing Mojsoski to sue Barnes, Johnson, and Rennaker would, therefore, be redundant of suing the Department itself. For those reasons, Mojsoski cannot sue Barnes, Johnson, and Rennaker for acts occurring in their official and individual capacities, at least not under Title VI.

## **D. Damages**

Defendants request to dismiss Mojsoski's demand for punitive damages because they may not be awarded in private suits brought under Title VI. (ECF 19 at 15-16). Defendants argue that Title VI is a Spending Clause statute, and the Spending Clause does not allow punitive damages. (*Id.*). In response, Mojsoski abandons his claim for punitive damages, and wisely so. (ECF 22; ECF 23 at 1, 7). It is settled law that "punitive damages may not be awarded in private suits brought under Title VI." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). "Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages." *Id.* at 188. While Mojsoski asks the Court to "strike" his demand for punitive damages from his complaint (ECF 22; ECF 23 at 7), a party cannot embed a motion within a response brief, as motions must be filed separately. N.D. Ind. L.R. 7-1(a). Regardless, it is clear that Mojsoski is abandoning his demand for punitive damages, which in any event is futile under the law and moot given the disposition of this case.

On the other hand, Defendants argue that Mojsoski's mention of emotional distress damages are also not recoverable under Title VI. (ECF 24 at 8 (citing ECF 23 at 6)). Emotional trauma (such as dropping grades or absenteeism) can serve as evidence of intentional discrimination. *C.S. v. Couch*, 843 F. Supp. 2d 894, 907 (N.D. Ind. 2011). However, statutes creating causes of actions against federal funding recipients under the Spending Clause, such as Title VI, are akin to breach of contract claims for which emotional distress damages are not available. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022) (Rehabilitation Act and Patient Protection and Affordable Care Act). Additionally, federal funding recipients cannot be treated as having consented to be subject to liability for emotional damages. *Id.* at 1570-72. Therefore, in addition to foregoing his punitive damages request, Mojsoski must forfeit any claim for emotional damages as they are not recoverable under Title VI.

Recognizing that the complaint was filed *pro se*, the Court "cannot fill the void by crafting arguments and performing the necessary legal research." *Knox v. Byrne*, 821 F. App'x 643, 644 (7th Cir. 2020) (citation omitted). It is true that a court may allow a party to replead under Rule 15 if amendment will cure the complaint's deficiencies or would not be futile. Fed. R. Civ. P. 15; *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) ("The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." (citations omitted)). However, repleading when the statute of limitations bars all acts alleged in the complaint results in a futile effort. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim," especially when the claim is time-barred and additional allegations will not "save the claim."); *I.B. of T. Union Local No. 710 Pension Fund v. Flynn*, No. 17-cv-05532, 2019 WL 1281991, at *4 (N.D. Ill. Mar. 20, 2019) ("[D]ismissal is warranted where the allegations of the complaint show a claim to be time-barred and provide no inkling that there may be a basis to toll the limitations period."); *Green v. Meeks*, No. 20-cv-00463-SPM, 2021 WL 2661508, at *5 (S.D. Ill. June 29, 2021) (dismissing Section 1983 claim with prejudice because the claim was barred by the statute of limitations). Any amendment to Mojsoski's complaint would be futile and additional allegations will not save the claim because of the statute of limitations.

In conclusion, Mojsoski has pleaded himself out of court by alleging facts which are time-barred, and in any event, the Court finds that: (1) Mojsoski has failed to plausibly plead that his third failed attempt was caused by any of Defendants' discriminatory intent, (2) Mojsoski is precluded from suing Defendants Barnes, Johnson, and Rennaker in their individual or official capacity, and (3) Mojsoski cannot recover punitive and emotional distress damages.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (ECF 18) is GRANTED. Mojsoski's claim is time-barred, and to let him replead his claim would result in a futile effort, which will not cure the deficiencies of his complaint. Accordingly, the case is dismissed with PREJUDICE.

SO ORDERED.

Entered this 30th day of November 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge